## UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT OF TEXAS

Kenneth Allen Pruitt, pro se
on behalf of himself "Plaintiff",

vs.

Defendants Joseph Robinette Biden Jr.
 and John Forbes Kerry, acting alone,
 or in concert, in a purported
official capacity

and
US Department of Treasury (USDT),
US Environmental Protection Agency
(EPA)
US National Institute of Environmental
Health Sciences (NIEHS),
acting alone, or in concert,
and
head of USDT Steven Terner Mnuchin,
head of EPA Andrew Wheeler
head of NEIHS Rickard Woychik

and heads of USDT, EPA, and NIEHS
unnamed for 2021 and later due election
transition,
said heads named individually in his/her
official capacity and when not acting in
his/her official capacity but acting ultra
vires,
acting either alone or with unknown and
unnamed other persons improperly causing
violations of USA domestic law referenced
within 2006 USA entry to 2003-31-OCT
MERIDA UNITED NATIONS
CONVENTION AGAINST
CORRUPTION (UNCAC) and/or violate
UNCAC',
collectively "Defendants".

CASE NO. 9.21 CW13 RC/ZH

**COMPLAINT FOR
INJUNCTIVE AND
DECLARATORY RELIEF**

**AND**

**PETITION FOR WRIT OF
MANDAMUS AND FOR
QUO WARRANTO**

**AND**

**COMPLAINT FOR
LITTLE TUCKER ACT
MONETARY AWARD**

FILED: 1/19/21
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

## JURISDICTION

1.   Plaintiff's case provides this Court with jurisdiction to determine that which is hard to believe:

> "It is hard to believe that the United States would enter into treaties that are sometimes enforceable and sometimes not. Such a treaty would be the equivalent of writing a blank check to the judiciary. Senators could never be quite sure what the treaties on which they were voting meant. Only a judge could say for sure and only at some future date. This uncertainty could hobble the United States' efforts to negotiate and sign international agreements."

> "To read a treaty so that it sometimes has the effect of domestic law and sometimes does not is tantamount to vesting with the judiciary the power not only to interpret but also to create the law."

Above quotes are of Chief Justice Roberts' in Medellin v. Texas 552 U.S. 491 (2008) at 510, 511.

2.   Plaintiff does <u>not</u> ask the Court to decide if climate change is (i) real or not, or (ii) human caused or not,  even though life of Plaintiff (and many others) depend(s) upon the climate.

3.   Plaintiff's case provides this Court jurisdiction to find that Paris Climate Accord (PCA) is "sometimes enforceable" (creating unfair, disproportionate financial obligations on USA taxpayers) and "sometimes not" (not binding on signatory countries to comply with climate actions). This Court can find PCA is void of governing law provisions against which one can clearly test compliance and void of clauses that impose penalties for failure to comply.

4.   Plaintiff's case provides this Court jurisdiction to assess recent December 12, 2020 "Statement by President-elect Joe Biden on the Five-Year Anniversary of the Paris Agreement":

"Five years ago today, the world gathered to adopt the Paris Agreement on climate change. The product of years of tough diplomacy, the Paris Agreement created an unprecedented framework for global action to avoid potentially catastrophic planetary warming, while building global resilience to the climate impacts we are already experiencing. It sent a clear signal that nearly 200 countries were — finally, together —moving toward a clean-energy future."

https://buildbackbetter.gov/press-releases/statement-by-president-elect-joe-biden-on-the-five-year-anniversary-of-the-paris-agreement/

5.     Plaintiff's case provides this Court with jurisdiction to determine if the Constitution forbids the Executive Branch from signing PCA or renewal or replacement while President-elect knows:

(a) PCA is not self-executing even though President-elect represents to American people that signing is "moving toward a clean-energy future", and

(b) Senate Resolution (S. Res. 98) exists and forbids binding entry into PCA.   President-elect Biden and Biden's lead climate designee (John Kerry) voted for S. Res. 98 in 1997 when both were Senators, and

(c) "the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U. S. 579, 587 (1952) cited in *Medellin v. Texas* 552 U.S. 491 (2008) at 528.

6.     Plaintiff's case provides this Court with jurisdiction to determine improper signing by President of PCA because the President does not make PCA law to bind domestic persons or foreign persons to move toward a clean-energy future.

7.     President-elect Biden and Kerry are well aware that, during 1997, the Kyoto Protocol:

3

(a) was proposed via 1992 United Nations Framework Convention on Climate Change (UNFCCC).  and that protocol suggested "developed countries" have greater responsibility to act and greater financial burden than "developing countries", and

(b) was rejected in 1997 by US Senate resolution 'S. Res 98' by Yea-Nay Vote. 95-0. (12) Senate imposed conditions, 'then and thereafter', on USA becoming a *signatory* to any international agreement on greenhouse gas emissions under UNFCC:

"… United States should not be a signatory to any protocol to, or other agreement regarding, [1992 (UNFCCC)]  at negotiations in Kyoto in December 1997 or thereafter which would:

(1) mandate new commitments to limit or reduce greenhouse gas emissions for the Annex 1 Parties, unless the protocol or other agreement also mandates new specific scheduled commitments to limit or reduce greenhouse gas emissions for Developing Country Parties within the same compliance period;

 or (2) result in serious harm to the U.S. economy"

8.      Plaintiff's case provides this Court with jurisdiction to determine that:

(a) S. res 98 time period of 1997 'then and thereafter' applies to 2021,

(b) PCA is a protocol to, or other agreement regarding, 1992 UNFCCC,

         whether treaty or not, and whether binding or not,

(c) PCA should not be signed because PCA provisions contravene S. res 98

         (1) mandate new commitments for USA to limit or reduce greenhouse gas emissions

         for USA as one of the Annex 1 Parties, but the protocol or other agreement does not

         also mandate new specific scheduled commitments to limit or reduce greenhouse gas

         emissions for Developing Country Parties within the same compliance period; *or*

         (2) result in serious harm to the U.S. economy,

(d) representations to Plaintiff (and other American people) that signing PCA is "moving toward a clean-energy future" is misuse of influence because PCA is not binding.

(e) PCA is not self-executing being sometimes enforceable and sometimes not, and subject to cancellation by 2024 or later President-elect, and

(f) In regard to (e) and PCA, Plaintiff asks this Court to consider whether

"(t)here is a presumption against finding treaties self-executing having domestic force in USA courts without further legislation. *Medellin* v Texas 552 U.S. 491 (2008), and

even if an international treaty may constitute an international commitment, it is not binding domestic law unless Congress has enacted statutes implementing it or unless the treaty itself is "self-executing.

9.      Plaintiff's case provides U.S. Supreme Court jurisdiction, if relief is hereby denied and denial is appealed, to confirm that the Supreme Court, not the Executive Branch, has final word on whether Executive Branch can enter in a material climate related arrangement with foreign nations, without "Advice and Consent of the Senate" and "two thirds of the Senators present concur", as required by Constitution Article II, Section 2.

10.     The President's authority to act, as with the exercise of any governmental power, "must stem either from an act of Congress or from the Constitution itself." *Youngstown supra at* 585 (1952).

11.     In *Medellin* supra, Chief Justice Roberts writes these thoughts:

"But the responsibility for transforming an international obligation arising from a non-self-executing treaty into domestic law falls to Congress, not the Executive. *Foster*, 2 Pet., at 315. The requirement that Congress, rather than the President, implement a non-self-executing treaty derives from the text of the Constitution, which divides the treaty-making power between the President and the Senate.

The Constitution vests the President with the authority to "make" a treaty. Art. II, §2.

5

If the Executive determines that a treaty should have domestic effect of its own force, that determination may be implemented "in mak[ing]" the treaty, by ensuring that it contains language plainly providing for domestic enforceability.

If the treaty is to be self-executing in this respect, the Senate must consent to the treaty by the requisite two-thirds vote, ibid., consistent with all other constitutional restraints.

Once a treaty is ratified without provisions clearly according it domestic effect, however, whether the treaty will ever have such effect is governed by the fundamental constitutional principle that "'[t]he power to make the necessary laws is in Congress; the power to execute is in the President.'" (citations omitted."

"As already noted, the terms of a non-self-executing treaty can become domestic law only in the same way as any other law—through passage of legislation by both Houses of Congress, combined with either the President's signature or a congressional override of a Presidential veto. See Art. I, §7.

12 . The Court has subject matter jurisdiction over this action under 18 U.S.C. § 1346 ("Little Tucker Act") whereby this district court possesses concurrent jurisdiction with Court of Federal Claims for

"civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort"

13.    This action does not fall within 18 U.S.C. § 1346(a)(2) exception for contracts subject to Contract Disputes Act, 41 U.S.C. § 7101 et seq.

14.    This Court also has subject matter jurisdiction under Article III of the U.S. Constitution and 28 U.S. Code § 1331 Federal question where district courts have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States including for liquidated or unliquidated damages in cases sounding in tort.

15.     This Court also has subject matter jurisdiction under 28 U.S. Code § 1361 action by writ of mandamus, or quo warranto there within, to compel an officer of the United States to perform his duty, wherein the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

16.     This Court has further subject matter jurisdiction under 28 U.S. Code § 1651 (a) or (b), where (a) [t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law, which would include quo warranto, and (b) [a]n alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

17.     Defendants owe Plaintiff duty of compliance with *Principles of Ethical Conduct for Government Officers and Employees.* https://ethics.od.nih.gov/principl.htm

18.     That duty owed to Plaintiff by Defendants includes disclosure by officers and employees of waste, fraud, abuse, and corruption as appropriate.

19.     This Court has further subject matter jurisdiction under 28 U.S. Code § 1361 action to compel an officer of the United States to perform his duty.  This Court as a district court has original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

20.     This Court has further subject matter jurisdiction under to issue writs pursuant to 28 U.S. Code § 1651 which provides that "(a) [t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law and (b) [a]n alternative writ or rule nisi may be issued

by a justice or judge of a court which has jurisdiction.

21.    Plaintiff's case provides this Court jurisdiction to pronounce on the delicate balance between

(i) enabling campaign 'political puffing and promises' for which little or no harm to health

and environment will result, versus

(ii) exchanging for votes various material outright lies and omissions of fraud,

resulting in harm to health and the environment, when outcome determinative of an election.

22.    Plaintiff's case provides this Court jurisdiction for quo warranto legal action based on equal

protection to resolve a dispute over whether Biden has the legal right to remain in and hold the

public office of President-elect (or President after inauguration).

23.    Plaintiff does <u>not</u> ask the Court to count votes or decide if Defendant Biden is duly elected as

President or not.   However, Plaintiff's seeks writ of mandamus in *quo warranto* as 'show cause

order' related to false pretense and omission about PCA.

24.    Plaintiff is a citizen, taxpayer, voter and mineral interest owner and seeks equal protection of

climate to avoid misuse of influence by (i) candidates for elected office, and (ii) elected officials, and

(iii) employees, agents and contractors of (i) and (ii) to whom tasks are delegated during applicable

term and thereafter.

25.    Plaintiff does not ask this Court to find equal protection requires identical treatment of

all persons in all situations.  Plaintiff seeks equal protection as a citizen, taxpayer, voter and

mineral interest owner which is equal to non-citizens, non-taxpayers, non-voters and non-

owners of mineral interests.

26.     A non-USA citizen, non-taxpayer, non-owner of mineral interest would not be subjected to equal financial risk, taxes and burden under same situation.

27.     In Plaintiff's prayer for relief, Plaintiff seeks a 'show cause order' from this Court to command Defendant Biden to show Plaintiff that Defendant Biden did not receive votes in exchange for Defendant's Biden promise to promptly sign PCA when elected.

28.     In climate matters alleged by 'climate experts' to be life or death so as to cause disruption of Worlds' economies to pursue solutions, this Court is asked by Plaintiff to demand Defendant Biden to show why he should be President when Defendant Biden if he exchanged false promises about PCA for votes.

29.     Plaintiff's case presents this Court with jurisdiction of genuine issues of undue influence related to PCA and energy availability for national security, economy, environment and/or public safety.

30.     Said undue influence was outcome determinative of the 2020 President election: "out of PCA with Trump" versus "in PCA with Biden"; however Plaintiff's complaint is not a "political question" but a question of "corruption" under 2003-31-OCT MERIDA UNITED NATIONS CONVENTION AGAINST CORRUPTION (UNCAC).

31.     Plaintiff's case provides this Court jurisdiction to distinguish between representations which are

        (a)  'political puffing' while 'kissing the baby' (e.g. this is mere political question, not one upon which life or death depend)

(c)  'killing the baby', i.e. 'risk loss of life' by 'hollow promises' (e.g. a substantive, egregious lie or omission of material fact) and whether there is an exception from corruption by candidate for office for statements made upon life or death depend.

32.    Plaintiff asks for protection against representations and omissions, for example those regarding PCA,  that risk lose of human life, enable looting or cause waste of natural resources and result in harm to the environment because of inaction.

33.    Said requested protection is needed against candidates for Executive Branch, or elected Executive Branch persons, who state or imply to the public that PCA is moving to cleaner air or is effective or binding (or words of similar import) when PCA is not binding, not enforceable and do not contain provisions imposing penalty for non-compliance.

34.    This Court is thus asked by Plaintiff to confirm that the Constitution extends fundamental protections of equal protection and due process to all persons subject to U.S. laws, with or without regard to citizenship, for protection against misuse of influence and material, egregious fraudulent pretense used to trade valuable substantive commercial promises for votes for election, when human life depends thereon.

35.    Buying votes by promising to pay cash as value is prohibited, then buying votes by promising entry or re-entry to PCA as value must be prohibited. Also, such must be abhorred when false.

36.    Protection of this Court is needed to prevent misuse of influence relating to PCA arrangement which is:

(a) threat to national security by diminishing hydrocarbons' production needed for defense;

(b) detriment to economy by making surplus or wasting hydrocarbons' assets and infrastructure,

(c) looting of USA nation's finances and national assets by those who will make financial and technical transfers under the false presences or guise of the PCA.

37.     Said misuse of influence included acts or omissions Defendants USTD, EPA, and EIEHS and candidates associated with Biden election to Executive Branch and former Executive Branch officers, agents, press and contractors who made representations to voters concerning reentering PCA.

## VENUE

38.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391 (e)(1)(B) where a substantial part of property that is the subject of the action is situated or where a substantial part of the events or omissions giving rise to the claim occurred.

39.     Plaintiff's mineral interests are all situated within Nacogdoches County, Texas, and local taxes are imposed on said mineral interests, within this Court's district.

40.     Venue is also proper in this district for claims in which no real property is involved pursuant to 28 U.S.C. § 1391 (e)(2)(C) where the plaintiff resides, and a Defendant is an Officer or Employee of the United States' Executive Branch.

41.     Venue is further proper for 28 U.S. Code § 1331 Federal question claims because plaintiff resides in the Court's district pursuant to 28 U.S. Code § 1402(b) civil action on a tort claim where United States is a defendant.

42.      Having venue, this Court has authority to grant injunctive relief under 5 U.S.C. § 702 and

declaratory relief under 28 U.S.C. §§ 2201 and 2202.


## INTRODUCTION

43. Standing by Plaintiff to make this complaint is clear from this Introduction and Statement of

Facts which follow.

Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

For convenience of the Court and for sake of brevity, footnotes showing references cited, and links

therefor, are placed at end of Statement of Facts.


44.      Chief Justice Roberts in *Medellin supra* states:

    "It is hard to believe that the United States would enter into treaties that are sometimes

    enforceable and sometimes not."


45.      Plaintiff asks this Court to determine that which is hard to believe:

    that is, if survival of all humankind depends on PCA as certain 'climate experts' allege,

    then

        (a) why is PCA not enforceable regarding emissions' reductions, and

        (b) why would Defendants exchange signing putative PCA for votes if not for

personal gain.


46.  After initial 2016 USA signing, PCA (1) has been treated as:


    (a) Fraud: James Hansen, who some call 'father of client change awareness', allegedly said:

It's a fraud really, a fake…It's just bull**** for them to say: "We'll have a 2C warming target and then try to do a little better every five years.' It's just worthless words. There is no action, just promises."(2)

(b) Not enforceable: Defendant Kerry, when 2015 Secretary of State responded:

"But with all due respect to [James Hansen], I understand the criticisms of the agreement *because it doesn't have a mandatory scheme and it doesn't have a compliance enforcement mechanism*. That's true."

"…186 countries, for the first time in history, all submitting *independent plans …which are real*, for reducing emissions."

"Obviously, if a Republican were elected, they have the ability, by executive order, to undo things … but that's why I don't believe the American people – who predominantly do believe in what is happening with climate change – I don't think they're going to accept as a genuine leader someone who doesn't understand the science of climate change and isn't willing to do something about it." (2)

(c) Enduring: 2016 statement attributed to former President Obama:

"Nearly 200 nations came together as—*a strong, enduring framework to set the world on a course to a low-carbon future.*"

And someday we may see this as the moment that we finally decided to save our planet."

(3)


47.    Plaintiff submits above 46.(b) and 46.(c) above fail when tested against below data evidencing lack of PCA's effectiveness and this 47.(d) and (e) below:

> "An analysis of current commitments to reduce emissions between 2020 and 2030 shows
> that almost _75 percent of the climate pledges are partially or totally insufficient to_
> _contribute to reducing GHG emissions by 50 percent by 2030_, and some of these pledges

are unlikely to be achieved. Of 184 climate pledges…128 insufficient (70%)."
(4)(5)(11)(21)

(d) Unfair:  2017 attributed to former President Trump:

"...United States will withdraw ... begin <u>negotiations</u> to <u>reenter</u> either the Paris Accord or

… <u>entirely new</u> transaction *on <u>terms that are fair to the United States,</u>*..." (6)(7)

(e) Terminable, not enduring:  because USA properly and legally exited PCA during 2020 according to 2017 notice given per PCA provisions.   USA joined PCA in 2016 by Executive Action of then President Obama without 2/3's Senate approval.  2020 notice of formal 2021 withdrawal was by Executive Action of then President Trump.

## STATEMENT OF FACTS

48.  Plaintiff contends, based on above press including End Notes and other supporting materials Plaintiff has incorporated herein that offering exchange of signing PCA for votes is misuse of influence.

49.    That is, Plaintiff complains that Defendants, in positions of influence with knowledge of technical details and other facts, have misused what is misunderstood by Plaintiff and other members of the USA public. Said Defendants' misconduct distracts resources away from technical actions essential to meet true climate priority needs.

> "Developing countries and green groups want to limit conflicts of interest in the global climate talks...Participants…debate the role fossil fuel companies and other influential industries should play in the international talks, after negotiators at the latest round of United Nations talks kicked the can down the road."(9)

14

50.   Defendant Biden's family were engaged in hydrocarbons activities and Defendant Kerry became engaged in climate related securities, with direct profits determined as result of PCA related activities, as set forth herein below.

51.   Plaintiff provides this Court the following statement of factual overview of PCA arrangement structure:

(a) PCA is a main body document having negotiated uniform terms common for all countries. PCA Article 2.2 enables different '*Intended* Nationally Determined Commitment' (INDC) for emissions reductions submitted by each country.  (1) (10)

> "This [Paris] Agreement will be implemented to <u>reflect equity</u> and the principle of <u>common but differentiated responsibilities</u> and <u>respective capabilities</u>, in the light of <u>different national circumstances</u>." (1)

(b) Each INDC is to be updated every five (5) years to adjust emissions targets.

(c) Behind INDC aspects loom Article 4.3 of 1992 United Nations Framework Convention on Climate Change (UNFCCC) broad wording about finance and technology transfer by "developed countries" to "developing countries", without details. (10)   1997 Kyoto Protocol was proposed via above 1992 UNFCCC.  That protocol suggested "developed countries" have greater responsibility to act and greater financial burden than "developing countries". (10)

(d) Kyoto Protocol was rejected in 1997 by US Senate resolution 'S. Res 98' by Yea-Nay Vote. 95-0. (12) Senate imposed conditions, 'then and thereafter', on USA becoming a *signatory* to any international agreement on greenhouse gas emissions under UNFCC. (11)

... United States should not be a signatory to any protocol to, or other agreement regarding, [1992 UNFCCC] at negotiations in Kyoto in December 1997 or thereafter which would: (1) mandate new commitments to limit or reduce greenhouse gas emissions for the Annex 1 Parties, unless the protocol or other agreement also mandates new specific scheduled commitments to limit or reduce greenhouse gas emissions for Developing Country Parties within the same compliance period; or (2) result in serious harm to the U.S. economy. (11) Worthy of special note are votes of Biden (D-DEL), Yea and Kerry (D-MA), Yea. (12), but also, in favorable light is Kerry's proposed amendment No. 987 (Ordered to lie on the table) regarding credible compliance mechanisms and market-oriented approaches of emissions budgets. (13)


52.  Plaintiff provides this Court the following Plaintiff's characterization of PCA:

(a) Plaintiff contends that, as to USA's involvement with PCA, PCA is not effective as a treaty, not formal accord, nor binding or enforceable agreement but collection of contingent promises and was terminable.

(b) USA joined PCA in 2016 by Executive Action of President Obama without Senate approval. (3)

(c) 2020 notice of formal 2021 withdrawal was by Executive Action of President Trump. (6)(7).

(d) When compared to international commercial contracts, PCA fails on many bases:

| Basic 'checklist':  commercial contract | PCA: compare against main body PCA |
|---|---|
| + be binding | - not binding on emissions |
| + specify governing law | - no governing law |
| + select controlling language - be clear and precise | - no selected language to control |
| + have efficient dispute resolution, rapid but fair | - no effective dispute resolution |
| + penalties enforced against violators | - no express enforcement penalties |
| + address project finance in clear manner | - no 'typical' financing terms, no allocation of costs |
| + set concise agreed-upon obligations (no-excuses or specific limited) | - no set environment performance (individually determined targets, some delayed, some conditional) |
| + address adverse acts to be avoided or reduced | - outside scope is technical debate on which climate change parameter(s) are human caused and how to adjust |
| + managers direct subordinates' performance | - no direct control except state-owned |

53.     Plaintiff claims that Defendant Officials of USA, including Defendants Biden and Kerry, have not been honest with Plaintiff or other members of the USA public.

(a) Based on information and belief, PCA is nonenforceable and 'nonbinding' on emissions reduction because increased energy consumption is required for increased development (Human Development Index, discussed in India's INDC discussed below) and emissions increases are necessary for growth and necessary in view of current slate of technology.

(b) Plaintiff contends that, based on information and belief from INDCs of PCA, 'survival of the Planet' via PCA INDCs is conditioned upon growing energy consumption and that survival issue is known by Defendants, but was not disclosed when Defendants traded signing PCA for votes.

54.     Plaintiff claims that Defendant Officials of USA, including Defendants Biden and Kerry, have not been honest with Plaintiff or other members of the USA public that a binding PCA requires Senate approval.

(a) PCA was not submitted to USA Senate for ratification as binding treaty at any time after Obama signed.

(b) Plaintiff claims that Defendant Officials of USA, including Defendants Biden and Kerry, have not been honest with Plaintiff or other members of the USA public as to reasons why a binding PCA was not made and submitted for Senate approval

(c) 1997 S. Res 98 Senate history shows why PCA was not properly submitted.  (21)

Senator: "… *if the treaty [Kyoto] we are negotiating today does not equally commit developing nations, like China, to binding commitments, there will be no incentive for China and the other nations of the developing world to make responsible and environmentally sound choices as they develop.*"

"...China will surpass the United States in carbon emissions by the year 2015…"

"…China has indicated steadfast refusal to apply any type of binding obligations upon its own economy and its own industry…"

*...after China assumes its role as a leading carbon emitter, she will not be very eager to*

*make the tough and costly corrections to retrofit her industries to reduce emissions of*

*greenhouse gases..."*

"...*allow[s] her to import industries from OECD nations that would choose to relocate there*

*rather than change their ways and clean up their acts at home...*"(21)

(d) Table of 2016 data below is partial confirmation that 1997 Senate record correctly predicted 2020 future: China is one of ~ 4 'core' lead countries within G20 which are ~60% GHG emissions sources:

| | China | India | USA | Russia | UK old era industrial revolution reference |
|---|---|---|---|---|---|
| CO2 % of world (ver.) | ~30% (10.7) | ~7% (3.5) | ~15% (5.2) | ~5% (1.8) | ~1% (0.6) UK, EU is ~10% |
| GDP T | 21.5T | 8.7 T | 19.0T | 3.8T | 2.7T |
| *Labor force M* | *910* | *515* | *160* | 77 | 33 |
| *reserves FOREX/GLD T* | *3.4 T* | *360B* | *117B* | 370B | 130B |
| *% poverty* | *4% (reported)* | *22%* | *15%* | ? | 15 |

(e) Numbers in Plaintiff's Table above are from publicly available CIA Factbook, except CO2 from other sources cited herein. (14) UK at small 1% of problem is reference point for 'old 1750AD to 1890 industrial revolution' metric. EU ~10% CO2 is not within Table (no single mandate to control multiple INDCs). (31-32)


(1) China:

Su Wei, China's Paris delegation head is quoted: "The basic facts do not change. *The problem has been caused by developed countries*". (15)

Yet 2016 UK temperature data enables debate of opposite; over ~170 years it did not significantly rise (16).  Around 1975, temperatures increased as many others entered global markets,

from near "zero" energy used for export production to massive world leading exports causing emissions. (17)  Figure 1.2 of reference cited last in (17) shows 'hockey stick' exponential increases of certain hazards.

Opposite to 'developing country' status:

(a) China has nearly as many drivers "…poised to break past 300 million…" as USA has people - *not indicator of mere 'developing country'*. (18)

(b) 2016 <u>China consumes most electrical power in world</u> and its largest electrical utility is the *second largest company by revenue in the world*. (19)

Notwithstanding above, China's 2016 INDC inserted exceptions to GHG limits and allows unrestricted economic growth by achieving "peak carbon dioxide emissions by approximately 2030, or sooner as best efforts allow" (20)

'Quick math' on '15 years" delay (2015 to 2030, 'gross' estimate):

Assume China population 1.4 Million, UK  70 Million and same per capita emissions (simplification), then 1 year of China emissions equals 20 years UK.  15 years China delay is 300 future years of UK.  Add India population 1.4 Million (low side) to China, 2.8 Million total, then 15 year delay is about 600 future years of UK.

(2) India

     India's power grid (~58% Government-owned Power Grid Corp) is one of world's largest

behind China's.  In 2015, India <u>promised</u> by 2030 (15 years) to produce <u>40% of its electricity from</u>

<u>non-fossil fuel sources</u> yet coal fired about 60%. (24)

     Internal issues are (i) air pollution kills 1.25 million people in India every year (22) and

(ii) 12 of top 25 most polluted cities are Indian per one World Health Organization date update. (23)

     INDC states:

     "India accounts for <u>2.4% of the world surface area</u> but supports around <u>17.5% of the world</u>

     <u>population.</u> It houses the largest proportion of global poor (30%), around 24% of the global

     population without access to electricity (304 million), about 30% of the global population

     relying on solid biomass for cooking and 92 million without access to safe drinking water. "

     "The average annual energy consumption in India in 2011 was only 0.6 tonnes of oil

     equivalent (toe) per capita as compared to global average of 1.88 toe per capita. It may also

     be noted that no country in the world has been able to achieve a Human Development Index

     of 0.9 or more without an annual energy availability of at least 4 tonnes oil equivalent (toe)

     per capita. With a HDI of 0.586 and global rank of 135, India has a lot to do to provide a

     dignified life to its population and meet their rightful aspirations." (25)

     INDC continues:

     "The successful implementation of INDC is contingent upon an ambitious global agreement

     including additional <u>means of implementation to be provided by developed country parties,</u>

     technology transfer and capacity building…*at least USD 2.5 trillion (at 2014-15 prices) will*

     *be required for meeting India's climate change actions between [2015] and 2030.* " (25)


(3) Russia

     Russia's INDC is subject to forestry: (26)

Limiting anthropogenic greenhouse gases in Russia to 70-75% of 1990 levels by the year

2030 *might be* a long-term indicator, subject to the maximum possible account of absorbing

capacity of forests. "

"Russia accounts for...25% of the world's forest resources. "

 "...if contribution of the Russian forests is fully taken into account, limiting GHG

emissions... does not create any obstacles for social and economic development. "(27)

One Press view:

Russia's 2017 emissions were 32% less than in 1990.  Thus Russia can pollute more and still

meet INDC goals. (28)


(4) Saudi Arabia.  Saudi Arabia's INDC is proxy for oil producers whose economy is driven by fossil

fuels (Mid-East, Venezuela, others).

Saudi Arabia's INDC is honest, frank and straightforward.

INDC is conditional:

"These ambitions are contingent on the Kingdom's economy continuing to grow with an

increasingly diversified economy and a robust contribution from oil export revenues to the

national economy. It is also premised on the fact that the economic and social consequences

of international climate change policies and measures do not pose disproportionate or

abnormal burden on the Kingdom's economy." (29)


55.  Based on information and belief from INDC (A) through (D) above, 'survival of the Planet' via

PCA INDCs is conditioned upon growing energy consumption and associated pollution which is life

threatening. (30)

56.     Plaintiff asks this Court to find that Defendants knew, or should have known, the foregoing condition of growing energy consumption to planet's survival based on their involvement with PCA and that Defendants should not have traded signing PCA for votes.

57.     Plaintiff complains that the above Introduction and this Statement of Fact shows:

(a) Original PCA was fraudulent, not binding.

(b) Biden's purported PCA re-entry is likewise fraudulent.

(c) Such high-level corruption undermines proper environmental action and distracts from important climate change activities.

(d) Plaintiff, as well as entire USA public, is victim of PCA environment-fraud corruption.

(e) absent protection of this Court, other Official acts of environmental kleptocracy, including retaliation by certain embedded Federal agency personnel, can occur.

(f) pollution can be life threatening and PCA is not addressing basic pollution effectively

58.   For convenience of the Court and sake of brevity, Plaintiff provides "footnote" data

references for Introduction and Statement of Facts in these "End Notes":

(1)  https://treaties.un.org/doc/Treaties/2016/02/20160215%2006-03%20PM/Ch_XXVII-7-d.pdf
(2) https://www.theguardian.com/environment/2015/dec/12/james-hansen-climate-change-paris-talks-fraud
https://www.theguardian.com/environment/2015/dec/13/john-kerry-james-hansen-climate-change-paris-talks-fraud
(3) https://obamawhitehouse.archives.gov/blog/2016/09/03/president-obama-united-states-formally-enters-paris-agreement
(4)" The Truth Behind the Climate Pledges Watson", Robert et al. (November 2019).  Universal Ecological Fund ISBN 978093190936
(5) links which track INDC emissions (without endorsement thereof),
http://climateactiontracker.org/indcs.html
http://cait.wri.org
http://instituteforenergyresearch.org/analysis/india-triple-co2-emissions-new-climate-commitment/
https://en.wikipedia.org/wiki/List_of_countries_by_carbon_dioxide_
(6) https://www.whitehouse.gov/the-press-office/2017/06/01/statement-president-trump-paris-climate-accord
 (7) https://www.state.gov/on-the-u-s-withdrawal-from-the-paris-agreement/
(8) Sample references to 'John Frum" activities
 http://www.smithsonianmag.com/history/in-john-they-trust109294882/
http://www.dailymail.co.uk/travel/travel_news/article-3440799/Forget-Prince-Philip-Meet-South-Pacific-island-cult-worship-spirit-American-World-War-II-soldier-hope-ll-return-Coca-Cola-TVs-medicine.html
(9) https://insideclimatenews.org/news/18052017/paris-climate-talks-fossil-fuel-influence-conflict-interest
(10)  https://treaties.un.org/doc/Treaties/1994/03/19940321%2004-56%20AM/Ch_XXVII_07p.pdf
https://treaties.un.org/doc/Treaties/1998/09/19980921%2004-41%20PM/Ch_XXVII_07_ap.pdf
(11) https://www.congress.gov/bill/105th-congress/senate-resolution/98
(12)https://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congress=105&session=1&vote=00205
(13) https://www.congress.gov/congressional-report/105th-congress/senate-report/54
(14) https://www.cia.gov/library/publications/the-world-factbook/rankorder/2254rank.html
(15) https://www.theguardian.com/global-development/2015/dec/03/china-poor-countries-wealthy-states-emissions-paris-climate-talks-cop21
(16)http://www.metoffice.gov.uk/hadobs/hadcrut4/data/current/web_figures/hadcrut4_annual_global.png
(17) See Worldbank data on China use of fossil fuels from 1970 to now.
        http://data.worldbank.org/indicator/EG.USE.PCAP.KG.OE?locations=CN
        http://data.worldbank.org/indicator/EG.USE.COMM.FO.ZS?locations=CN
        https://www.unenvironment.org/news-and-stories/press-release/new-report-outlines-air-pollution-measures-can-save-millions-lives, *then download attachment:*
        *Summary - Air Pollution in Asia and the Pacific - Science Based Solutions*
        *2019_air-pollution-asia-pacific_summary report(v0225).pdf*
(18) https://blogs.wsj.com/chinarealtime/2014/11/28/china-soon-to-have-almost-as-many-drivers-as-u-s-has-people/
(19) https://en.wikipedia.org/wiki/State_Grid_Corporation_of_China
https://en.wikipedia.org/wiki/Electricity_sector_in_China
(20) https://www4.unfccc.int/sites/submissions/INDC/Submission%20Pages/submissions.aspx

*Rated "highly insufficient" at https://climateactiontracker.org/countries/china/*

(21) https://www.congress.gov/congressional-report/105th-congress/senate-report/54/1?overview=closed

(22)https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4215499/
https://www.weforum.org/agenda/2020/03/6-of-the-world-s-10-most-polluted-cities-are-in-india/

(23)https://en.wikipedia.org/wiki/List_of_most_polluted_cities_by_particulate_matter_concentration

(24) https://newrepublic.com/article/141640/paris-agreement-burning-trump-executive-order-obama-clean-power-plan

(25) http://www4.unfccc.int/ndcregistry/PublishedDocuments/India%20First/
INDIA%20INDC%20TO%20UNFCCC.pdf

(26) https://www.climatechangenews.com/2019/09/23/russia-formally-joins-paris-climate-agreement/

(27) https://www4.unfccc.int/sites/submissions/indc/Submission%20Pages/submissions.aspx (28) https://www.telegraph.co.uk/news/2019/09/23/russia-ratifies-paris-climate-accord-targets-critically-insufficient/

(29)https://www4.unfccc.int/sites/ndcstaging/PublishedDocuments/Saudi%20Arabia%20First/KSA-INDCs%20English.pdf

(30)
https://en.wikipedia.org/wiki/List_of_most_polluted_cities_by_particulate_matter_concentration
https://www.thelocal.it/20170131/our-lungs-are-breaking-smog-levels-way-above-safe-limits-in-northern-italy
https://www.thelocal.it/20170131/our-lungs-are-breaking-smog-levels-way-above-safe-limits-in-northern-italy,  http://www.bbc.com/news/world-europe-35188685
https://www.thelocal.fr/20160621/pollution-in-france-kills-48000-people-each-year

## PARTIES

59.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

60.     Plaintiff is a Marine, veteran who served in Vietnam combat 1966-67 and treats loyalty and honesty to America and the Constitution as serious matters.  Lies and failure of duty of government officers,  employees and contractors are not acceptable and cost lives.

61.     Plaintiff is a citizen of USA, residing now in Nacogdoches County, Texas.

62.     Plaintiff is owner of a relatively small number of mineral acres in Nacogdoches County, Texas, for which he is taxed annually by local Nacogdoches county and school districts based on their appraised value of the mineral acres.  Plaintiff receives periodic payments for royalties from production of hydrocarbons by lessors of his mineral acres.

63.     Plaintiff has standing to make claims herein for many reasons set forth above and below:

(a) Plaintiff is a Texas taxpayer.

(b) Texas tax authorities including school districts rely upon ~$14 Billion annual royalties

and tax revenues from hydrocarbon energy production.

https://www.chron.com/business/energy/article/Study-Texas-oil-gas-industry-paid-

14-billion-13615603.php

(c) Defendant Biden asserts he will sign re-entry for Paris Climate Accord (PCA) promptly

after Biden's inauguration.

https://apnews.com/article/europe-climate-climate-change-paris-france-

6e21f86b5c4affaee8ee04e870a1ea6c

(d) Putative PCA will reduce hydrocarbon production, since hydrocarbons are blamed for

$CO_2$ emissions and climate change.

 (e) reducing hydrocarbon production reduces Texas' hydrocarbon royalties/taxes due to

reduced production, and in a spiral to get back to same tax cash flow, Texas counties/schools

must increase taxes.

(f) Plaintiff, like all royalty owners, faces higher taxes on diminished revenue to increase tax

flow to offset taxes lost on lost production over previous tax revenue received by

counties/schools.


64.     Defendant Biden is President-elect of USA.

(a) Biden served as VP under Obama and prior to that, as US Senator.

(b) Press reports that Defendant Biden is flooding agencies with "equity advisors":

https://news.bloomberglaw.com/environment-and-energy/biden-urged-to-flood-agencies-with-

environmental-equity-advisers

65.     Defendant Kerry has been appointed by Defendant Biden as having special assignment for climate change.

(a)  Kerry served as Secretary of State under Obama and prior to that as US Senator

(b)  Based on information and belief, said appointment is for Kerry to be " special presidential envoy for climate"

https://www.pionline.com/washington/john-kerry-named-climate-czar

66.     Based on information and belief, the following appeared in The Boston Globe:

The Boston Globe — Kerry has become an investor in and adviser to the KFA Global Carbon ETF (Ticker: KRBN) launched over the summer on the New York Stock Exchange that is attempting to set a global price for carbon emissions. Economists have long believed that if the actual cost of pollution can be established, it will incentivize the market to manage climate risk and fund innovation to reduce global warming.

https://kfafunds.com/john-kerry-takes-the-climate-change-fight-to-wall-street/

67.     Prior to 1 November 2020, Defendant Kerry was reported in press to be engaged in some manner with climate hedge funds or similar equities

Bloomberg – John Kerry is betting that Wall Street will succeed where governments failed in the fight against climate change. The former U.S. secretary of state and one-time presidential candidate is throwing his weight behind the KFA Global Carbon ETF, an exchange-traded fund tracking the three most robust markets for carbon credits. Based on an index developed by IHS Markit Ltd. and Climate Finance Partners, the ETF begins trading Thursday under the symbol KRBN.

https://kfafunds.com/john-kerry-backs-new-carbon-price-etf-in-climate-change-fight/

68.     Defendants USDT, EPA and NIESA are federal agencies.

69.   Plaintiff believes that each of the individually named agency 'head' Defendants currently hold

their respective positions as heads of Defendants USDT, EPA and NIESA. Should any one of the

named Defendants no longer hold their position, their successor is automatically substituted as a

party pursuant to Federal Rule of Civil Procedure 25(d) because the Defendants are sued in their

official capacity.

## STATEMENT OF FACTS AND APPLICABLE TREATY LAW

70.   Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.


71.   Plaintiff confirms that case law indicates that Chief Justice Marshall wrote in 1829:

"A treaty is, in its nature, a contract between two nations, not a legislative act. It does not

generally effect, of itself, the object to be accomplished; especially, so far as its operation is

infra-territorial; but is carried into execution by the sovereign power of the respective parties

to the instrument. In the United States, a different principle is established. Our constitution

declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of

justice as equivalent to an act of the legislature, whenever it operates of itself, without the aid

of any legislative provision. But when the terms of the stipulation import a contract—when

either of the parties engages to perform a particular act, the treaty addresses itself to the

political, not the judicial department; and the legislature must execute the contract, before it

can become a rule for the court."

Foster & Elam v. Neilson, 27 U.S. (2 Pet.) 253, 313–14 (1829). *See* THE FEDERALIST No. 75 (J.

Cooke ed. 1961), 504–505.


72.   Plaintiff confirms that case law indicates also that Chief Justice Roberts wrote in 2008 in

footnotes to *Medellin supra* that:

2 The label "self-executing" has on occasion been used to convey different meanings. What
we mean by "self-executing" is that the treaty has automatic domestic effect as federal law
upon ratification. Conversely, a "non-self-executing" treaty does not by itself give rise to
domestically enforceable federal law. Whether such a treaty has domestic effect depends upon
implementing legislation passed by Congress.


3 Even when treaties are self-executing in the sense that they create federal law, the
background presumption is that "[i]nternational agreements, even those directly benefiting
private persons, generally do not create private rights or provide for a private cause of action
in domestic courts." 2 Restatement (Third) of Foreign Relations Law of the United States
§907, Comment a, p. 395 (1986) (hereinafter Re statement). Accordingly, a number of the
Courts of Appeals have presumed that treaties do not create privately enforceable rights in the
absence of express language to the contrary. See, e.g., United States v. Emuegbunam, 268 F.
3d 377, 389 (CA6 2001); United States v. Jimenez-Nava, 243 F. 3d 192, 195 (CA5 2001);
United States v. Li, 206 F. 3d 56, 60–61 (CA1 2000) (en banc); Goldstar (Panama) S. A. v.
United States, 967 F. 2d 965, 968 (CA4 1992); Canadian Transp. Co. v. United States, 663 F.
2d 1081, 1092 (CADC 1980); Mannington Mills, Inc. v. Congoleum Corp., 595 F. 2d 1287,
1298 (CA3 1979).


73.    Plaintiff contends that above Roberts' footnote 3 did not take into account private claims such
as Plaintiff's claims resulting from violation of domestic laws referenced at 2006 USA entry to 2003-
31-OCT MERIDA UNITED NATIONS CONVENTION AGAINST CORRUPTION (UNCAC)
and/or violations of UNCAC.

74.   At 2006 USA entry to UNCAC, USA Senate asserted that USA has domestic law that complies with UNCAC.  Based on assertion of said compliance, USA Senate made a UNCAC Sec 66(b) withdrawal from hearings by International Court of Justice (ICJ)

75.   Thus, either said 2006 Senate assertion is wrong and USA does not have sufficient domestic law that complies with UNCAC or Plaintiff has a valid private cause of action under USA domestic law in domestic courts.

76.  Plaintiff asks this Court to

(a) find PCA is an "international arrangement on greenhouse gas emissions under United Nations Framework Convention on Climate Change (UNFCCC)",

(b) find USA purporting to be "in or out" of PCA is 'outcome determinative' by 2020 election results, and such is either proper or not ["in with Biden", "out with Trump"],

(c) find that Senate record facts show Defendants had knowledge of PCA-related fraud scheme
and continued it:

(1) Biden knows PCA cannot bind USA.   Biden voted for S.Res 98. when Senator in 1997.

S. Res 98 prohibited USA 'then and thereafter' **from becoming a *signatory* to any international agreement on greenhouse gas emissions under UNFCCC.

(2) Kerry also knew. Kerry voted for S.Res 98 when Senator in 1997.

(3) At signing PCA, Obama vicariously knew when his VP Biden and Sec. of State Kerry knew.

(4) That 1997 S.Res 98 can explain why Biden, Obama, Kerry did not submit PCA to 2015/16 Senate because they did not have sufficient votes for Senate approval, and

(d) find that it is impossible for Plaintiff to receive due process and equal protection with

others outside the USA when local USA tax authorities and businesses are mandated to comply with

PCA, or are subject to "carbon taxes" to comply with PCA.\, but others outside the USA are not.

(e) grant relief to Plaintiff as set forth in Relief Requested below which includes

(1) enjoin Biden from false representations to Plaintiff and the World that USA PCA

re-entry binds USA to direct USA taxpayer funds to PCA activities, without USA Senate consent,

(2) require Biden to seek Senate consideration of PCA before USA represents to

Plaintiff and the World that USA will comply with PCA or devote USA taxpayer funds to support

PCA activities.


77. To be clear, Plaintiff repeats here aspects Plaintiff's complaint:

(a) PCA entry and now later re-entry by Defendant Biden is discretionary and ultra vires, not

permitted or mandatory under the Constitution without "Advice and Consent of the Senate" and

where "two thirds of the Senators present concur", as required by Constitution Article II, Section 2,

and

(b) claims against improper, discretionary and ultra vires of Defendant Biden is supported by

acts or omissions of other Defendants including Defendants Kerry, EPA, USDT and EIESH.

.

**OTHER IMPACTS OF DEFENDANTS' ACTIONS AGAINST PLAINTIFF**

78.    #1  First Cause of Action:  Ultra Vires -  Violation of 5 U.S.C. §§ 706(2)(A)-(D)


79.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.


80.    Plaintiff asks this Court apply 5 U.S. Code § 706 scope of review, and to the extent necessary

to decision for Plaintiff's case presented and that this reviewing Court decide all relevant questions

of law, interpret constitutional and statutory provisions, and determine the meaning or applicability

of the terms of an agency action.

81.    Plaintiff ask this Court as reviewing court to

       (a) compel proper agency action by Defendants USDT, EPA, and NIEHS which has

       unlawfully withheld or unreasonably delayed; and

       (b) hold unlawful and set aside improper agency action, findings, and conclusions regarding

       PCA found to be:

              (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

              (2) contrary to constitutional right, power, privilege, or immunity;

              (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

              (4) without observance of procedure required by law,

              (5) unsupported by substantial evidence in a case subject to sections 556 and 557 of 5

              U.S. Code  or otherwise reviewed on the record of an agency an agency hearing

              provided by statute; or

              (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by

              this Court.

82.    # 2 Second Cause of Action: Corruption by Misuse of Influence -  Acts by Defendants Biden

and Kerry, acting alone or in concert or in concert with other Defendants and unknown, unnamed

third persons, that violate domestic laws referenced at 2006 USA entry to 2003-31-OCT MERIDA

UNITED NATIONS CONVENTION AGAINST CORRUPTION (UNCAC) and/or violate

UNCAC.

83.   At 2006 USA entry to UNCAC, USA Senate asserted that USA has domestic law that complies with UNCAC.  Based on assertion of said compliance, USA Senate made a UNCAC Sec 66(b) withdrawal from hearings by International Court of Justice (ICJ).

84.   Failure of U.S. Supreme Court to hear this matter, if relief by this Court is hereby denied and denial is appealed, places that Senate assertion of existence of domestic law in question and allows ICJ jurisdiction for Plaintiff's appeal to ICJ.

85.   Plaintiff asks this Court recognize Plaintiff's action against corrupt Defendants who did that which cannot be understood in a climate 'life or death' situation: purporting to enter an international arrangement to address climate change on which Plaintiff's life and lives of all humankind are alleged to depend to address climate change but did not make the arrangement enforceable.

86.   Defendants did not comply with UNCAC and do not now comply with UNCAC, instead regarding PCA, Defendants

(a) misuse influence in violation of UNCAC for political gain to be elected or to be designated special climate envoy,  and regarding PAC, engage in "fraud" as defined by UNCAC,

(b) misuse their influence for their individual financial gain or financial gain of family members, business associates and organizations with whom they have relations and receive benefits

(c) cause or enable corrupt acts or continuing corrupt acts that violate UNCAC, including misuse of influence and looting or allow looting, waste or abandonment of USA national hydrocarbon assets including Plaintiff's mineral interest and

(c) harm Plaintiff, other mineral interest holders and taxpayers, and other people of the USA and the World

87.   UNCAC forward recites the following:

(a) "Corruption is an insidious plague that has a wide range of corrosive effects on societies. It undermines democracy and the rule of law, leads to violations of human rights, distorts markets, erodes the quality of life and allows organized crime, terrorism and other threats to human security to flourish."

(b) "[UNCAC]  will warn the corrupt that betrayal of the public trust will no longer be tolerated. And it will reaffirm the importance of core values such as honesty, respect for the rule of law, accountability and transparency in promoting development and making the world a better place for all."

88.    In this Plaintiff's prayer for relief, Plaintiff seek orders from this Court that will confirm to Plaintiff and USA public that betrayal of USA public trust will no longer be tolerated.

89.    It is a matter of life and death for Plaintiff and lives of future generations that climate change be addressed without misuse of influence and without fraud and most important by arrangements with foreign nations that are enforceable to manage technical and economic issues, based on information and belief of certain alleged 'climate experts' and as is being experienced by Plaintiff.

90.  # 3 Third Cause of Action: Deceit to be address Writ of Manadamus for Quo Warranto -  Acts by Defendants Biden and Kerry, acting alone or in concert or in concert with other Defendants and unknown, unnamed third persons, that violate domestic laws referenced within 2006 USA entry to 2003-31-OCT MERIDA UNITED NATIONS CONVENTION AGAINST CORRUPTION (UNCAC) and/or violate UNCAC.

91.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

92.    For political gain to gain votes to become President of the United States, Defendant Biden promised with unmistakable words of clear import that in exchange for votes that if a voter voted for Defendant Biden then Defendant Biden would sign the PCA promptly after his election.

93.    Plaintiff claims that, based on his experience and discussion with other voters, that

(a) various press reports indicate that climate change was a major issue to 2020 voters, and

(b) the election became PCA determinative: "in PCA with Biden" and "out of PCA with Trump".

94.    Said Defendant Biden promise in exchange for votes, without explanation that PCA is unenforceable as admitted by Defendant Kerry, violates domestic laws referenced at 2006 USA entry to 2003-31-OCT MERIDA UNITED NATIONS CONVENTION AGAINST CORRUPTION (UNCAC) and/or violate UNCAC.

95.    For this Plaintiff's prayer for relief, Plaintiff seek an order from this Court that Writ of Mandamus for Quo Warranto be imposed on Defendant Biden for Defendant Biden to show why he should be President when his election is invalid because Defendant Biden exchanged false promises about PCA for votes and Plaintiff alleges that deceit about PCA during campaign impacts Plaintiff and all humankind.

99.    Said deceit is not mere 'political puffing' but instead a matter of life and death, based on information and belief of assertions made by 'climate experts' and as is being experienced by Plaintiff,

100.    Plaintiff does not ask this Court to speculate whether voters knew or were sufficiently informed that PCA is unenforceable or "sometimes enforceable and sometimes not".

101.    Plaintiff asks this Court to have Defendant Biden show he did not offer to sign PCA in

exchange for votes and did not fail to disclose that PCA is unenforceable or perhaps "sometimes

enforceable and sometimes not" for emissions controls.


102. # 4 Fourth Cause of Action:  Petition for Writ of Mandamus for quo warranto within

Mandamus


103.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.


104.    For this Plaintiff's prayer for relief, Plaintiff seek an order from this Court pursuant to 28

U.S. Code § 1361 action to compel an officer of the United States to perform his duty.  This Court as

a district court has original jurisdiction of any action in the nature of mandamus to compel an officer

or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.


105.    For this Plaintiff's prayer for relief, Plaintiff seeks a 'show cause order' from this Court to

command Defendant Biden to show Plaintiff why he should remain President-elect (or President

after inauguration) if he received votes in exchange for his promise to promptly sign PCA when

elected or if he failed to disclose that PCA is not enforceable to stop major emissions or at best

'sometimes enforceable' (when USA is required to pay money) and "sometimes not" (when other

countries should reduce emissions).


106.    Climate matters within PCA scope are alleged by 'climate experts' to be life or death.  PCA

will cause major disruption of Worlds' economies to pursue solutions to such matter.

107. This Court is asked by Plaintiff to demand Defendant Biden to show cause why he should remain President if Defendant Biden exchanged false promises, with omissions, about PCA for votes.

108. For this Plaintiff's prayer for relief, Plaintiff seeks this Court to issue said writ pursuant to 28 U.S. Code § 1651 which provides that "(a) [t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law and (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

## ADDITIONAL SPECIFIC PRAYERS FOR RELIEF

Wherefore, Plaintiff respectfully request that the Court grant the following additional specific relief:

109. Issue restraining order and temporary injunction ordering Defendants, their subordinates, agents, employees, and all others acting alone or in concert with them to not sign any document purporting to cause USA to re-enter PCA or enter replacement PCA, or any other material climate related arrangement with one or more foreign nations substituting for PCA, without "Advice and Consent of the Senate" and where "two thirds of the Senators present concur", as required by Constitution Article II, Section 2.

110. Issue an injunction ordering Defendants Biden and Kerry to not act in a manner intended to cause, and instruct their subordinates, agents, employees, and all others acting for the Executive Branch in concert with them to not act in a manner intended to cause, detrimental reliance by members of the USA public or one or more foreign nations that USA will enter re-enter PCA or enter replacement PCA, or any other material climate related arrangement with one or more foreign nations substituting for PCA, without "Advice and Consent of the Senate" and where "two thirds of the Senators present concur", as required by Constitution Article II,

111.    Enjoin Defendants Biden and Kerry acting alone, or in concert, and USDT, EPA, and NIEHS acting alone, and USDT, EPA and NIEHS in concert, and their subordinates, agents, employees, and all others acting for the Executive in concert with them, from asserting to the USA public and foreign nations the idea that they have authority or power to be an environmental lawmaker or have power to bind USA to a non-self executing treaty related to the environment.

112.    Enjoin Defendants Biden and Kerry acting alone, or in concert, and USDT, EPA and NIEHS acting alone, and USDT, EPA, and NIEHS in concert, and their subordinates, agents, employees, and all others acting in concert with them causing USA to be a signatory to any protocol to, or other agreement regarding 1992 UNFCCC  at negotiations in Kyoto in December 1997 or thereafter which would: (1) mandate new commitments to limit or reduce greenhouse gas emissions for UNFCCC Annex 1 Parties, unless the protocol or other agreement also mandates new specific scheduled commitments to limit or reduce greenhouse gas emissions for Developing Country Parties within the same compliance period; or (2) result in serious harm to the U.S. economy, without "Advice and Consent of the Senate" and where "two thirds of the Senators present concur", as required by Constitution Article II, Section 2

113.    Enjoin Defendants Biden and Kerry acting alone, or in concert, and USDT, EPA, and NIEHS and acting alone, and USDT, EPA, and NIEHS in concert, and their subordinates, agents, employees, and all others acting in concert with them, from spending or transferring funds or making grants, loans or contracts for activities,  directly or indirectly, have a primary or majority purpose or effect  to  support or expand PCA , without "Advice and Consent of the Senate" and where "two thirds of the Senators present concur", as required by Constitution Article II, Section 2.

114.    Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert

with them from continuing expenditures of money for activities directly or indirectly in support of

PCA, without "Advice and Consent of the Senate" and where "two thirds of the Senators present

concur", as required by Constitution Article II, Section 2, and


115.    Issue Writ of Mandamus for quo warranto to be imposed on Defendant Biden to command

Defendant Biden to show this Court for protection of Plaintiff, and others in same statutory class

that Defendant Biden did not

    (a)  promise to sign PCA when elected in exchange for votes,

    (b) know PCA was not enforceable to stop major emissions, and

    (c) exchange false pretenses or omissions about PCA for votes, and

    (d) if Defendent Biden refuses to show, or fails to show, to this Court that Defendant Biden

did not (a) promise to sign PCA when elected in exchange for votes, (b) know PCA was not

enforceable to stop major emissions, and (c) exchange false pretenses or omissions about PCA for

votes, then in this Plaintiff's prayer for relief, Plaintiff asks this Court to promptly conduct

mandamus and ouster proceedings pursuant to quo warranto provisions under 28 U.S.C. 1651(a), to

wit: mandamus and quo warranto hearings followed by an order requiring a federal probe and to

convene a federal grand jury to internally investigate official misconduct, and intentional violation of

federal rights of Plaintiff and others in same statutory class.


116.    Grant Plaintiff monetary award to Plaintiff, including court fees and expenses, in an amount

not to exceed Little Tucker Act limit.

117.    Grant any other relief that this Court may deem fit and proper.


Dated:  January 19, 2021

Respectfully submitted,

By:     /s/ Kenneth Allen Pruitt


*Kenneth Allen Pruitt*

Kenneth Allen Pruitt, pro se

on behalf of himself "Plaintiff",


Kenneth A. Pruitt
kap8063@yahoo.com
Telephone:    936-714-3811
Facsimile: none
Address:
Trailer Village RV Park
16580 N. US Hwy
Garrison, Texas 75946
Nacogdoches County, Texas