IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

KENNETH ALLEN PRUITT,

  Plaintiff,

v.              CASE NO. 9:21-CV-00013-TH-ZJH

JOSEPH ROBINETTE BIDEN, JR., et al.,

  Defendants.

**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**

   This case is assigned to the Honorable Thad Heartfield, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management.  Pending before the court is Defendants' *Motion to Dismiss*.  Doc. No. 60.  Because Plaintiff has failed to establish that he has standing to bring this case, the undersigned recommends that the court grant Defendants' motion.

### I.  Background

   On January 19, 2021—the day before Joe Biden assumed the Office of the Presidency—Plaintiff Kenneth Allen Pruitt filed his *Complaint for Injunctive and Declaratory Relief, Petition for Writ of Mandamus and for Quo Warranto, and Complaint for Little Tucker Act Monetary Award* against Biden, various other federal officials, and several federal agencies.  Doc. No. 1.  Two days later, Pruitt filed a related *Motion for Temporary Restraining Order and Request for Additional Injunctive and Declaratory Relief.*  Doc. No. 2.  The following month, he filed a second *Motion for Immediate Restraining Order* (Doc. No. 19), and, two months after that, filed a *Motion for Declaratory Judgment* (Doc. No. 39).  Each motion requested the same relief: Pruitt requested this court enjoin President Biden from reentering the Paris Agreement, an international agreement

on climate change, because it is allegedly a "treaty" requiring the Senate's "advice and consent."

*See* U.S. CONST. art. II, § 2.  According to Pruitt, reentering the Agreement would jeopardize the

value of certain mineral interests he owns in Nacogdoches County, Texas.  Doc. No. 1 at 25.

On September 17, 2021, this court denied all three motions.  Doc. No. 52.  Meanwhile,

Pruitt attempted to bypass this court's authority by filing an interlocutory appeal with the Fifth

Circuit.  Doc. No. 42.  After that court and the United States Supreme Court declined to hear the

appeal, Defendants filed the pending *Motion to Dismiss* under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  Doc. No. 60.  In their motion, Defendants argue that Pruitt's complaint is

frivolous and that the court lacks jurisdiction because Pruitt has failed to establish constitutional

standing.

## II.    Legal Standard

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure

challenges the subject-matter jurisdiction of the federal district court.  Federal courts are courts of

limited jurisdiction, meaning they possess only the "power authorized by [the] Constitution and

statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be

presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

contrary rests upon the party asserting jurisdiction."  *Id.*  "A case is properly dismissed for lack of

subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate

the case."  *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008).  Specifically, "[a]

Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a

plausible set of facts that establish subject-matter jurisdiction.'"  *Davis v. United States*, 597 F.3d

646, 649 (5th Cir. 2009).

"Standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1)." *Consumer Data Indus. Ass'n v. Tex. through Paxton*, 564 F. Supp. 3d 506, 512 (W.D. Tex. 2021) (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) and *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016)); *Isbell v. DM Records, Inc.*, 591 F. Supp. 2d 871, 874 (E.D. Tex. 2008) ("When a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action pursuant to Rule 12(b)(1).").

"The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003). Standing to sue means that "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972); *Save Our Cmty. v. United States E.P.A.*, 971 F.2d 1155, 1160 (5th Cir. 1992). The Supreme Court has established a three-part test for standing: "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Pierre v. Vasquez*, No. 20-51032, 2022 WL 68970, at *2 (5th Cir. Jan. 6, 2022) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732-33 (2008)). The injury "must affect the plaintiff in a personal and individual way." *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020), *cert. denied sub nom. McMahon v. Hartzell*, 141 S. Ct. 363 (2020). In other words, for an injury to be particularized, the plaintiff must have "a direct stake in the outcome." *Id.*

### III.   Discussion

Pruitt claims he has standing because the Paris Agreement "will reduce hydrocarbon production" in the United States, causing Texas to raise fewer taxes off such production. Doc. No. 1 at 26. Pruitt argues that Texas counties and schools will then increase other taxes to recoup that

lost revenue. *Id*. Accordingly, as a taxpayer living in Nacogdoches County, Texas, Pruitt asserts he will suffer financial hardship.

Absent special circumstances,[1] "standing cannot be based on a plaintiff's mere status as a taxpayer." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011). That is because "claims of taxpayer standing rest on unjustifiable economic and political speculation." *Id*. at 136. To find taxpayer injury, a court must assume "that elected officials will increase a taxpayer-plaintiff's tax bill to make up a deficit." *Id*. Therefore, to conclude "that an injunction against a government expenditure or tax benefit would result in any actual tax relief for a taxpayer-plaintiff" would amount to "pure speculation." *Id*.

As a taxpayer, Pruitt makes too speculative of an argument. He has not shown the likelihood that reentering the Agreement will force the United States to reduce hydrocarbon production or that Texas will consequently increase taxes. In fact, Pruitt admits the Agreement is relatively toothless: He calls it merely a "collection of contingent promises" that is "sometimes enforceable . . . and sometimes not," "not self-executing," and "not binding unless Congress has enacted statutes implementing it." Doc. No. 1 at 16, 2, 3, 5. He similarly notes that it lacks a "mandatory scheme" or "enforcement mechanism." *Id*. at 16. Therefore, without any enforcement mechanism in the Agreement, it's purely speculative that the United States will even achieve its emissions goals. Accordingly, Pruitt cannot claim an imminent injury nor a causal connection between that injury and Defendants' actions.

Further, the rule against taxpayer standing is designed "both to avoid speculation and to insist on particular injury." *Ariz. Christian*, 563 U.S. at 138. To establish particularity, Pruitt must

---

[1] Under *Flast v. Cohen*, 392 U.S. 83 (1968), a taxpayer has standing to challenge a law authorizing the use of federal funds in a way that allegedly violates the Establishment Clause. Here, Pruitt makes no claim under the Establishment Clause.

show that reentering the Agreement affects him "in a personal and individual way." *See McMahon*, 946 F.3d at 270. This means that he must be "distinguished" from any other plaintiff who might claim injury from the United States reentering the Agreement. *Id*. at 271. As one of millions of Texas taxpayers, Pruitt cannot carry that burden. Similarly, as a recipient of "periodic payments for royalties from production of hydrocarbons by lessors of his mineral acres," Pruitt cannot distinguish himself from other property owners. *See* Doc. No. 1 at 25. A reduction in hydrocarbon production would affect countless other holders of mineral acres.

Defendants point to a similar standing analysis that the Second Circuit conducted. In *Bender v. Obama*, 653 F. App'x 31, 32 (2d Cir. 2016), the plaintiff alleged that the multilateral agreement concerning Iran's nuclear program was effectively a treaty requiring Senate ratification. Because President Obama did not submit the agreement to the Senate for approval, the plaintiff alleged that the agreement's enabling act was unconstitutional. *Id*. The court noted that a plaintiff raising "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Id*. With that in mind, the court held that the plaintiff lacked standing because his alleged injuries were not concrete or particularized. *Id*.

Defendants' citation is appropriate. Here, Pruitt's injury is "only a generally available grievance about government," and he claims only harm "to his and every citizen's interest in proper application of the Constitution." *See id*. Further, as a taxpayer and holder of mineral interests, he seeks relief "that not more directly and tangibly benefits him than it does the public at large." *See id*. Accordingly, Pruitt "does not state an Article III case or controversy" and thus lacks standing. *See id*.

## IV.   Recommendation

For the foregoing reasons, the undersigned recommends that the court **GRANT** Defendants' *Motion to Dismiss*.  Doc. No. 60.

## V.   Objections

Under 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 23rd day of August, 2022.

_____
Zack Hawthorn
United States Magistrate Judge

6